Good afternoon, Your Honors. Jeffrey Rowland appearing for the appellant, Thomas White, in this case. I'd first like to address the issue of the denial of a continuance by the District Court on August 29th, if I could. To back up, I'm the attorney that appeared on August 29th for the first time. On August 16th, former counsel appeared for Mr. White. The plaintiff's lawyers were there as well. Discussed between the attorneys and the Court was the agreement, the stipulation, minor's compromise, the trust agreement, attorney's fees, costs, general survey of issues that were required to be resolved if and when the matter was then to come up for approval of the agreement and the minor's compromise. And what's significant about that hearing is that issues were left open, significant material issues were left open for further research by counsel, input to the Court the next time the matter came up for hearing. Specifically, counsel for my client, Ms. Dyer, stated we could reserve addressing that, the issue namely of the confidentiality clause in the agreement. As a matter of fact, Judge Breyer raised whether or not the confidentiality provision of the settlement agreement was valid, whether or not it was against public policy. It was discussed back and forth, and it was left that that issue would then be resolved at the next court hearing, and Judge Breyer said, sure. And then further proceedings occurred, and the Court stated, quote, think about it and come back and say whatever you want, end quote. Clearly, an invitation to both sides to come back and give input to the Court on the next, at the next hearing, those issues had to be resolved before the matter could be, before the agreement could be finally approved and before the minor's compromise actually could occur. Then Mr. Repugol. Was there a trial date scheduled? I'm sorry? Was there a trial date? Was there a trial date scheduled? It was a trial date of October 11th, yes, Your Honor. That had been scheduled, I think, back in March of 2005. So, then that matter, the trial date was The reason I asked you, counsel, was I was thinking a trial judge would have a very serious reason not to grant any continuances at the end of August with an October 11 trial date because anything that could put up in the air whether the trial was going to go forward would make it very hard to try the case at all. Rounding up a bunch of witnesses and victims in Mexico and bringing them to San Francisco for trial would be a very time-consuming, difficult process. I agree with you, Your Honor, but it was August 29th. Six weeks were left for trial. All the parties in the Court basically put the matter over until August 29th, and the agreement may not have been approved. There may have been a withdrawal of my client from the agreement. That's what I mean. Yeah. That's what I mean. You had a fissure-cut bait, and six weeks is not much time. If you don't fissure-cut bait and you get to five weeks and four and three, then your trial date is threatened. It may or may not have been. I didn't ask for a continuance of the trial date. I only asked for a very brief continuance. It was Monday, August 29th. I hadn't met my client yet. I just got in that date. I needed to get the file. Sure. Your client has the airplane defense. If the airplane doesn't show up with the witnesses, you win. That was a favorite defense in Fairbanks, Alaska. Yeah. And I've used that one, too, Your Honor, I should say. But nobody ever cited that at the August 29th hearing when I made the motion to continue. I didn't hear any objection from the plaintiffs. And the Court didn't say, well, what are we going to do about all the witnesses and the proceedings? Although the Court did say trial is set for October 11th. I was only asking for a very brief continuance. I went to see my client that Thursday. And that Friday, you know, I had decided and realized that there were a number of very serious major defects in the settlement agreement, in the stipulation, and that my client elected to withdraw his offer to settle. And that was communicated that Friday. I only asked for a very brief continuance, a very brief delay. The Court actually set September 9th, 11 days later, and I agree it's short, but set September 9th for the date to hear the motion to vacate the settlement agreement. So, I mean, that could have been the date. Instead of to vacate a settlement agreement that had already been approved, it could have been a date to, well, we'll put it over, give you a chance to meet your client, talk to former counsel, look at the files, read the settlement agreement, which I hadn't seen even, and come back and see if it can be settled. If it can't, then I suppose everybody would deal with the trial date, either on October 11th or some later date. Well, where in the record did you specify how long you wanted? I don't see that. I didn't ask for a specific time for the continuance. Right. So how can you say now today that you only asked for a brief delay? Well, what I did say was I need time to meet with my client, I need time to get up to speed and research this case. Right. And the Court said I'm approving the agreement, but I'll set it on for a motion to vacate the agreement. He said you could object later. We're not going to. Right. No, I realize. But I said, Judge, why don't we put over until that date, September 9th, the hearing on whether or not to approve the agreement? I mean, I so, in other words, I was, well, I was basically saying let's make September 9th, since you're already setting September 9th, to vacate an already approved agreement, why don't we put it over to September 9th to give me a chance to meet with my client, look at the file, and then come in and approve it or not approve it, do whatever you want. So I did ask, I did say let's put it over to September 9th, and the Court denied that. So what argument were you precluded from making later that you did make that you, by this denial of a continuance? You made all the arguments you wanted to make on the settlement agreement, didn't you? Well, the major prejudice, I guess, to my client was that after realizing all these defects and these errors in the agreement and the settlement and the stipulation and about the guardian ad litem and so on, there were some major problems with the He had he withdrew his offer to the settlement agreement. He withdrew his offer on September. Right. Why? No, no, no. I understand that. But you raised all that before. Judge Breyer said I've already approved that. Right. He said to you at the August 29th hearing, I've already approved the settlement agreement. If you have further objections, I'll hear you later. And he did hear you on the merits of those objections later, right? Yes, he did. So I don't understand your prejudice argument. Okay. The prejudice is that had the Court put over until September 9th, or even an earlier date in September, approving the agreement. But he already said at the hearing, in his mind, he'd already approved it. Well, but it wouldn't – but on that date, the status of the two remaining plaintiffs, Carlos Rose, 11 and 14, I want to say their names, but the status of those two plaintiffs would be decided on the next – at the next hearing. Until their status was resolved, either they were missing and they'd be dismissed or they would be found and either signed or not signed, and the agreement would go forward. But the agreement wasn't finally accepted, Your Honor, until their status was resolved. If their status was put over until September 9th, my client withdrew his offer. He was entitled to withdraw his offer. Under your theory. Yeah. Under your theory. Right. But it seems to me that Judge Breyer really took a look at your arguments and he decided them on the merits. He didn't say, well, you forfeited it because of the actions I took on August 29th, right? He did – he did look at them on the merits. But had he continued the approval and, therefore, left open the acceptance by all the plaintiffs until September 9th, my client would have withdrawn his offer by then. And there would be no settlement agreement. There would be no contract. He had an absolute contractual right to withdraw. Under your theory. Right. But the district court – the district court had already decided to approve the settlement agreement, as I read the record, right? Well, he would approve the settlement agreement only when the status of the two plaintiffs was determined. And if that was put over until September 9th, Your Honor, then – then the approval of the agreement could not occur until that date. In other words, the parties agreed in the stipulation that the status of the two remaining plaintiffs would be decided at the time that the minors' compromise hearing occurred. Okay. And if that was scheduled for September 9th – I know this is very technical – if that was scheduled for September 9th, then my – One month before trial. One month before trial, right? Right. My client would have withdrawn his – his offer to settle the agreement. And there would be no – there would be no settlement agreement. Okay. I understand your position, sir. That's – okay. That's – that would be the prejudice. So in any event, I think the Court erred by not granting a continuance. Did – did your client ever give a reason why he was changing lawyers so late in the game, a time late enough so if he got the continuance, the trial date would be threatened? There was a conflict of interest between my client and former counsel. And I informed the Court of that in a declaration, I think, on September 6th. That was the reason. There was a conflict of interest. So I suppose had the agreement, settlement agreement, been set aside – or not approved, I should say – not approved, then I would come back to Judge Breyer and say, I need a continuance. I'm just getting into the case. And there was a conflict of interest. I don't know. It's all speculation. But the prejudice here is that – and actually, Judge Breyer, on September 9th, inquired further of plaintiff's counsel, where are these two – these two plaintiffs? So as of that date, he wasn't yet – he wasn't fully satisfied and convinced. Right. I mean, this is when I read the record. It looks to me as though he heard all of your arguments on the merits. You had ample time to present your objections that Judge Breyer didn't cut you off later because of anything that happened on the 29th. So it's hard for me to see how you were prejudiced by the continuance – the denial of the continuance on that date. Well, okay. I understand your argument, I'm just saying. I'm giving you my reaction. Thank you. I appreciate that. I – he did – he gave me every opportunity to make all the arguments post-approval. I mean, that was the problem. I mean, after it's approved, then my client can't withdraw his – his offer. Judge Kleinfeld's still there. He just – the video just shifted, so that's okay. All right. A little disconcerting. But – and that's the problem. Had it been postponed, the hearing on the – on the agreement had been postponed, the hearing on the minor's compromise to September 9th, then my client would have withdrawn the offer. It would have been over with. All right. So that's the prejudice. Judge Kleinfeld. I'm sorry, I just have a video problem, but I'm here. Okay. Very good. Judge Larson. Can you – you can't see me, but I can see you fine. We see a nice flag there in your office, Andy. You – you raise a number of defects or claim a number of defects in the procedure here, but the vast majority of these seem to attach to defects that would prejudice or at least it appears to me would prejudice the minors. For example, conflicts with – of interest between the guardian ad litem and counsel for the minors. A number of the decisions that related to the minor's compromise that Judge Breyer made or deferred making. How does your client have standing to assert any of these? I don't see how they in any way prejudice your client. They prejudice my client in the following respect. If – if there's a basis for one of the minors and one of the plaintiffs to – to challenge the guardian ad litem, for example, if one of the minors comes back and says, wait a minute, I never realized he was getting all this money from a contingent fee from the adult plaintiffs, the minor plaintiffs or the other adult plaintiffs would have a come back to court under a 60B motion and set aside the – the settlement agreement and say, we were uninformed, we were defrauded, we didn't know all these facts, and reinstate the lawsuit against my – my client. That's – that's the prejudice, number one. In other words, my client is now open to the potential for the plaintiffs coming back and saying, we want to reinstate a lawsuit against you or against Mr. Collinsworth as a defendant, bring him in, because he never signed the stipulation. So they could say, well, he didn't sign, therefore, the agreement, the – the mutual release of claims against plaintiffs and defendants doesn't apply anymore, so we want to – we want to – now, since he didn't sign, we want to reinstate the lawsuit against Collinsworth, Collinsworth, then cross-complaints against my guy. My guy, the whole purpose, what he was bargaining for, what he expected was to get rid of everything, to settle everything. And instead, because of all these defects, he's opened up to – to future potentialities. I don't know. Maybe the plaintiffs will or won't. Okay. Then the next problem, I think, with respect to the guardian ad litem receiving a contingent fee, I mean, I think it's – it was improper, it's invalid, it's illegal, the fee that he was receiving. And it created a – a conflict of interest between him and the minors. And I think it – it goes to the heart of the integrity of the judicial system for – for a guardian ad litem. Well, why can't you – why can't you raise that after paying in the money? I mean, the only order on appeal here is the order directing your client, a judgment against your client, to pay money into court. And Judge Breyer said, well, I'll entertain some of these issues later, but there is a concern that the money is going to be dissipated. And why is it – why don't you have a remedy for that in the form of a – the subsequent proceedings that the district court itself is contemplating? The problem here is that the parties went through extensive settlement negotiations with Mr. Borrego. He came up from Mexico. Right. And he participated in the settlement – settlement discussions in the agreement. And his conflict of interest, I – I think on his face, affects – unfairly affects the nature of those – of those discussions. My client should have known that he was paying a huge amount of money, really, to the guardian ad litem illegally during the settlement process. But the money has not been disbursed yet. So all Judge Breyer's judgment is is to have the money paid into – into the district court. And if I understand what's happening, if that money is paid in, then he's going to have subsequent proceedings on how to disburse the money. And you can appeal from that, right? Yes, I can be appealed from. So why – what's wrong with Judge Breyer's order at this juncture to have the money paid into district court, period? Because his involvement irreparably – irreparably affected the fairness of the settlement process that went forward. Appearances before Judge Spiro, talking about the case. He had a – he had a conflicting motive. He had a personal financial gain in this – in this case. He should have been an independent person representing solely the interests of the minors. In fact – and instead, he had a personal motive that affected – I would – and I don't have any evidence of this. I agree. Right. But if this were the end of the case and we had all the record in front of us, we could judge that. But basically, if I understand what – what the district court order is that's in front of us, it's simply that your client have – pay the money into court, period, and that he's going to resolve these other issues later. So how can we get – even get into that? Okay. Resolving other issues later, of course, is another problem here, because all those issues should have been decided at the hearing on the minors' compromise. And the minors' compromise was the time when the status of the two plaintiffs would be resolved. And until that time, the agreement was not finally accepted. And until the agreement – I'm sorry if I'm just going – until the agreement is finally accepted, my client had a right to withdraw his – his offer, offer to settle. So the Court has not completed – I mean, even if it started the hearing of the necessary issues on the minors' compromise, the Court has not completed that hearing, and therefore, it's still open. And so, therefore, my client still has a right to withdraw his offer. Well, if – I mean, if all that's true, then this is simply an improper interlocutory appeal, and that we ought to wait until – until Judge Breyer finally issues a final judgment. You can pay in your money. We can just say it's improvidently certified. You can pay in your money. He can resolve the issues, and you can come back again, right? No. Well, what I'm saying is that that creates a – I mean, you have a – I mean, you can't just come up in the middle of a case and say this is unfair, and I think the district court is going to do something improper later. The only things in front of us is the order to – for your client to pay the money in. Well, what's before you really is – are all the decisions on – are all the issues as to whether or not the agreement is valid and the stipulation is valid. And this is no – Is there a final judgment? There is a final judgment. There's a 54B judgment. There's a summary judgment order against my client, which you – you have to review the issue. Summary judgment is usually not a final judgment. We've got a 54B certification. We have the 54B judgment. I didn't see any certification on the record. Is there one? Well, there's no certification. There's a 54B judgment. Usually, a summary judgment as to less than all of the parties and all of the issues does not result in a final – an entry of a final judgment. And I'm trying to figure out in – Judge Thomas, of course, has me thinking about this, whether we have jurisdiction. Well, this is a final judgment approving the settlement agreement and resolving all the issues. No, it's a 54B judgment. And usually, we wouldn't take that except by certification from the district court. The way I read the record is that Judge Breyer said that he thought there was some advantage in going forward on appeal right now and he could issue a 54B judgment. But I think what Judge Kleinfeld is saying is something that concerned me is that I'm not sure really it's a proper interlocutory appeal at this juncture. We have no findings on 54B from the – as we would usually have specific to the review, and it's discretionary in any event. As far as I can tell, the only thing we're reviewing is his order, the judgment, which says that your client has to pay $7 million to the clerk of court for later disbursement. Well, the order is approving the validity of the settlement agreement. He granted summary judgment and said the settlement agreement is valid and binding. And that's what's – and the money is to be paid. And there was a bond that was posted to stay the payment of the judgment. So it's a final – there's nothing else to decide. There's nothing else to resolve. Did he make an express determination that there is no just reason for delay and an express direction for the entry of judgment? It says here in 54B that directing entry of a final judgment as to one or more but fewer than all the claims your parties may only be made upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment. Do you have the words? I don't think those are the words, although – in the judgment. I think the judgment is final with respect to the – well, I think the judgment decides all the issues before the court. Well, wait. We don't look at the judgment to decide whether we think it is or is not final. If it's on less than all the claims your parties and there is no express determination. Well, it resolved all the issues. I don't have it in front of me now because I shipped all my stuff to San Francisco. Well, here's what I have, Judge Klinefeld. I have the judgment as saying Rule 54B, partial judgment. The court having granted plaintiff's motion for summary judgment by memorandum order filed December 5th, 2005, judgment is hereby entered in favor of plaintiffs and against defendants Thomas White. According to the terms of the written settlement agreement executed by White on July 8th, White shall pay immediately to the clerk of court the total amount of $7 million. It's so ordered. That's the extent of it. The caption is – It doesn't have the words. 54B, partial judgment. It expressly doesn't have the words. All right. It says it's partial. Well, it does, but it does resolve all the issues between the parties. Well, it doesn't, because that's where I was pursuing my prior line of questioning. I mean, what Judge Breyer said was he was going to reserve the issue of conflict of interest and the other guardian ad litem issues for a later time, right? And that's the – that's part of the center of your appeal, is that there's such a conflict of interest that the settlement needs to be set aside. Right? That's one of the others. And it's not decided yet. There's a preliminary decision that he's approved the settlement agreement, but on your primary issue, we don't have a final judgment, do we? On those issues, we don't have a final judgment. Okay. And there's also – I'm sorry, I thought you'd finish. Yeah, go ahead, Judge. I thought there was California law that says you can't have a final judgment until the fees are settled as well in a case involving juveniles. So until it's all wrapped up, it's just not done. Well, okay. I mean, that hasn't been raised. I would have to take a look at it. Right. I understand it's coming to you for the first time, but it's a – I guess the real question is what's left in the case? And I gather that there are some – some of the substantive issues that you raise in this appeal are still left in the case – the question of conflict of interest, the question of the appropriateness of the guardian ad litem. And Judge Breyer said he might revisit vacating the settlement agreement if he were persuaded by you that those were serious issues that affected the settlement agreement, right? Well, yeah, he – you're right. He did say that, and that's something that I invited him to do in the decision on the summary judgment. It's one of the issues that I raised challenging the validity of the agreement. But he did not address it. He didn't – he did not address it in the order on summary judgment approving the settlement agreement. So. You understand we have to raise jurisdiction sua sponte? Yes, I understand that, Your Honor. Well, then we'll come back, I guess. We'll give you some time for rebuttal, though. Why don't – let's hear from the other side right now. And these thoughts just came to me in the last couple of days, too. We should have given you a little notice, but you've answered, I think, our key questions. Do I have rebuttal time? Yes, obviously. Thank you very much. May it please the Court, my name is John Hill. I represent Plaintiffs and Aptolese. To follow up on the question that was just presented, I think it was the impression of counsel for both sides, as well as Judge Breyer, that appeal on the case was appropriate and proper. Can you point to anything in the record, obviously, that talks about his certification? Obviously, the order itself does not make the findings that we would ordinarily consider appropriate and necessary under Rule 54. I gather there's no separate certification order, because I didn't find one. Right. You're correct, Your Honor. There is no certification order. I think we were all under the impression, since the Court stated that it was entering judgment and filed a judgment on December 5th, along with its memorandum and order, in which it sent out all its findings based on the motion for summary judgment, which is at pages 949 through 966 of the record, where the Court... Are there any oral findings that you could point us to in the transcripts? Well, all the oral findings are reduced to written findings in the memorandum and order. Okay. There is a transcript of the hearing that occurred on November 4th, but the Court did reduce to writing the oral findings that the Court set forth on November 4th. And again, those are in the memorandum and order, pages 949 through 966 of the record before this Court, and at the same time, the Court filed that memorandum and order with those findings. It filed what I see now is called partial judgment, although, as the Your Honor read it, it did state judgment is hereby entered in favor of plaintiffs. Sure. You do have a judgment. We don't always accept those 50-4B judgments on appeal. And if we don't, then we wait for final judgment. And what we measure it by are the findings that there's no reason for delay and so forth, which I can't find in this case, I must say. I just don't. I see some colloquy by Judge Breyer, which may indicate he thought it was appropriate to take an appeal, but we don't have a certification or separate findings. I mean, one hates to make any make-work for the district court in the sense of having But what concerns me in this case is that it really appears that there are some significant issues that are unresolved in this case that affect this appeal. And one of the problems of 54B is you want to avoid two appeals on the same issue. So what do we have in this case that's left that is commingled with this appeal that Judge Breyer might make a decision on later? I understand that, Your Honor, but I think in Judge Breyer's memorandum and order, he sets forth all his findings indicating that there are no issues of fact involved in the issue as to whether the defendant quite intended to and did, in fact, enter into a settlement of the litigation with the plaintiffs. And so my concern goes a little beyond the whether he substantially decided the substantial words that Rule 54B requires are in there. They're not, and that's real serious. But as Judge Thomas says, even when the magic words are in there, we still sometimes reject the appeals. Here, I've got a couple of really substantive concerns with the non-finality. One is, it looks to me as though the California authorities under this California Probate Code, Section 3601, et sec., may very well require tying together the approval of the fees and the approval of the deal, the settlement with the plaintiff. And my other concern that, frankly to me, is more serious is where the money is. The nice thing about a final judgment that resolves all claims as to one party or all claims as to all parties or some claims as to one party is it can be executed on. And that means you don't get to appeal unless you either put the money in the registry of the court or post a supersedious bond. Right now, nobody except the defendant controls the money, as far as I know. Now, correct me if I'm wrong, but I don't think the money's been posted, and I don't think a supersedious bond for the money's been posted. Is that right? I think the bond has not been posted. Number one, the money has not been paid in the court. Number two, correct me if I'm wrong, but I believe a supersedious bond has been posted. It has. And I think Judge Breyer has ordered the maker of the bond, if this appeal is affirmed, to pay the monies into the Northern District, United States District Court for the Northern District if Mr. White does not do so in the time allotted. So a supersedious bond has, in fact, been posted. So the $7.2 million is secured by appropriate sureties? Yeah, I think it was $7.8 million. $7.8 million because the judge pessimistically thought it might take two years for this appeal. Fortunately, it's only taken less than one. Well, let me play this out a bit to see how much of a problem we have. Let's assume that we adopted your position and we affirmed the settlement agreement, okay, or affirmed the order. And then Judge Breyer then said, well, I've changed my mind, and I'm going to vacate the settlement agreement. Where does that leave us? Well, he would have to set aside the judgment. I mean, I can state as a matter of fact, it's not in this record, but you're asking me, so I'll have to respond as an officer of the court. A motion was made under Rule 6dB to set aside the judgment. That should be in the docket. So it's not on the docket. So and that was denied. So I mean, theoretically, it could go back and the judge could say, I'm going to set aside the judgment. But I guess there's no indication that that would happen. But I guess if he were to set aside the judgment, then there could be efforts at another repeal. But if there was, but if he did not set aside the judgment and this Court affirmed the judgment that has already been entered, then all that's left are matters between the plaintiffs and the court and counsel. It has nothing to do with Mr. White. All that involves Mr. White is whether if I pay this money, do I get a dismissal with prejudice and the release and the end of the litigation? Whether, you know, certain copying costs that attorneys might submit are too much, whether maybe it's 15 cents or 10 cents, you know. Kennedy. Let me ask you, because I agree with you to a large extent that what is Mr. White's concern is the release. But if he pays, Mr. White pays the money, and then you say there may be a disputation between counsel and the parties and the court in terms of how that money is allocated, and part of that dispute erupts or results in one or more of the parties pulling out of the agreement or being found to not be covered by the agreement because there was a conflict of interest between them and the guardian ad litem or that their rights were not represented or whatever it might be, then all of a sudden Mr. White no longer has that full release that he bargained for, correct? White. Well, except that judgment has already been entered on the agreement that the parties have entered into, number one. Number two, as a practical matter, it's irrelevant at this point because the matter is dragged on for so long that there are no minors involved at this point. They're all adults. I don't know if that solves your problem. The 40 percent contingent fee was not agreed to by adults. That's true. For minors. Right. So, and I'm more than happy to let the court make a determination on what's appropriate under the circumstances. You know, whatever the court orders is what the court orders, and I can stay here and now. There'll be no disputing what Judge Breyer orders, whether he orders 25 percent or what have you. One thing that he could order, I suppose, under California probate law is there's no deal at all. I think that, I'm not talking about this case now or any of the people here, but I think the reason why probate codes typically tie approval of the fees to approval of the representatives of the estate or minor or incapacitated person were bribed to throw the case. And that's why they're tied together. So there doesn't necessarily have to be a deal. Well, I think in this case, number one, there is a letter in the file in which Mr. Replogle told Judge Breyer that he had agreed that Mr. Borrego would receive certain compensation for the efforts that he's expended. And the counsel for Mr. White has said that constitutes a conflict of interest because Mr. Borrego is being paid for its efforts. I mean, you could make the same argument about counsel for plaintiffs and a contingent fee because they're being paid for their efforts. They have a conflict of interest with the client. I don't see that. Counsel for White has not cited any authority to that respect. And in addition to that, Judge Breyer has already taken that under consideration and has stated in the record that he wants the money paid in the court because he will make the determination himself on whether and if Mr. Borrego is to be compensated and if so, to what extent. Let me ask you another question. Yes, Your Honor. Excuse me. Well, Judge Breyer has already dismissed this action with prejudice. That's correct. So Mr. White has his release. I mean, the benefits of the release already, right? He's dismissed it with prejudice. So White, upon the payment of the monies that he's agreed to pay pursuant to the settlement agreement and stipulation, is a free man, so to speak. In other words, Judge Breyer has made the determination that the amount of settlement for the minors is fair and equitable vis-a-vis the minors, that that's a fair settlement for them and that the terms of the release that they're to sign is fair, is a fair release running to Mr. White. That's the only determination that's relevant to White. And he dismissed the action against the missing minors without prejudice, right? He dismissed it without prejudice in court on August 29th orally. He signed a written dismissal without prejudice on August 30th and then countersigned the stipulation of dismissal without prejudice on August 31st. Those are all on the record. Then when Mr. White complained at the hearing on September 9th through his counsel that that didn't give him enough protection because it was without prejudice, they could always come back and sue and what have you, Judge Breyer at that point said, fine, I'll make sure they can never come back at you. I will dismiss them with prejudice non-pro-tunc. So then on the end of that non-pro-tunc order as to the missing plaintiffs? What's that? Is the non-pro-tunc order issued as to the missing plaintiffs or is that just a statement on the record? No, I think it's a part. I'm pretty sure it's a part of the order subsequent to the hearing that took place on September 9th. That would be the October 3rd order, I believe, that is still stated. Because I know Judge Breyer was mystified at the time because White's counsel was complaining what was supposed to be a dismissal without prejudice, now you're doing it with prejudice. Therefore, the settlement agreement is ineffective because it was without. But he says, but I'm giving you what you asked for. I mean, it's obvious that White's coming up with every conceivable thing that they could throw into the kitchen sink to come up with an idea why not to proceed with a settlement. Even though attorneys who represented him throughout the litigation came into court on August 16th, said Mr. White has agreed with the settlement, he's agreed with the stipulation, he wants the court to approve this settlement. And then on the 29th, when the court set the time for the final settlement right before trial on October 11th, new counsel come in. Now, there's a statement, oh, well, there's a conflict of interest. Well, that was never stated on at the hearing on September 29th. And if you look at Judge Breyer's decision on the summary judgment motion, he states, moreover, counsel offered no excuse for his client's last-minute decision to substitute new counsel. So I guess I haven't seen it, but apparently Mr. Rotwein is now saying, oh, well, there's a conflict of counsel. We don't know what it was. There was no statement by Mr. White that he had a conflict of counsel and that resulted in some prejudice or whatever to him. There was no statement from his former counsel. And as Judge Breyer said, there was no excuse for the last-minute decision to change counsel. So ---- Roberts. Let me ask you about the you said that all of the initial plaintiffs are over the age of majority now. At this point. Does that include the missing, so-called missing plaintiffs? The two missing plaintiffs were not minors at the time they were missing, to my understanding. They were not minors. That's correct. So the risk, even if ---- I'm just assessing the risk of suit against White as to the so-called missing plaintiffs. If the settlement were overturned, the judgment with prejudice were overturned against them, the clock's ticking, right? Well, Mr. White pointed out in his brief that the time for them to bring an action against him would expire sometime in September, last September. So the clock has ticked and quit ticking so far as that's concerned. Mr. White, I think, gave the date of September something or other 2006 as being a time when they could finally reappear and sue him. And as Judge Breyer stated, well, if, you know, there's any theoretical lawsuit that they have because they got lost and have never reappeared, I mean, whether they're, you know, God bless them. I hope they're still living. But if they are, they've made very little notice to the world about that fact. Do you have any further questions? Any further argument you want to make on? No. I just do want to point out just a couple of quick points. One, the argument that, you know, Mr. the prior counsel had a conflict of interest. There's no evidence in the record to that effect whatsoever. And when Judge Breyer was presented with his request for continuance on September 29th, there was no representation as to the reason for change of counsel. And Judge Breyer pointed that out on that date and in his summary judgment order. As far as the ---- Are you saying that they did not submit a declaration saying there was a conflict of interest? I just heard today that Mr. Rotwein said at some point he did. But that would have been well after the hearing on September 29th, because as Judge Breyer noted in his summary judgment order, which he filed on December 5th, in ruling on the summary judgment motion and making the findings that he did, you'll find that at page 951 of this Court's record, he states, moreover, counsel offered no excuse for his client's last-minute decision to substitute new counsel. I heard Mr. Rotwein stay here today that at some point subsequent to that hearing, obviously, he filed a declaration saying there was a conflict of interest. There has been no declaration from Mr. White that he changed counsel for that reason, no declaration from prior counsel. And if there was such a declaration, there's no explanation as to what this supposed conflict of interest was. It's simply a statement with no basis other than counsel now stating that that was a fact. I'd like to point out, you know, what I think is very important, and it's stated in the record. Mr. White, three points. Mr. White insisted that the State court agreement and the Federal agreement, that is, the two California plaintiffs in State court and the now 20 plaintiffs in Federal court, be linked, because he didn't want to settle one without the other. And if you look at the agreement itself, it requires that linkage. And as we pointed out, in our view, contrary to what Mr. Consul for Mr. White has just said, that Mr. White could have withdrawn from the agreement after he signed it, we just are — I mean, there's no — no agreement whatsoever on that point, because he's already performed under the agreement by paying White — excuse me, by paying Garcia and paying Beam, the two plaintiffs in the State court case. He's already performed under the — under the agreement. He made those payments in July. And to say that he could have revoked at any time had he been given more time to revoke, that's incorrect, because we have a written agreement signed by all plaintiffs, signed by the defendant, no provision for revocation. The only provision is a contingency left to the court. And that was up to the court to approve or not approve the agreement. The court did. There was not an explicit term saying that this agreement does not bind any party until all parties have signed? It doesn't say that, Your Honor. It simply says the agreement does not become effective. It does not say that the parties are not bound. It only says the effectiveness commences after all parties have signed. It's to be presented to the court, and then it's to become effective. That's the term of art. Not binding, but effective. Could you read me the words? Could you read me the — Yeah. I will find those for you. I have it noted. Let me see. I'll grab that. It's page — I think you can find it at page 693 of your record, Your Honor. Yes, this says effective date. It says the settlement agreement shall become effective on the second business day after each of the following has occurred. And as of September — excuse me, August 29th, each of the items A, B, and C had occurred. The only remaining occurrence was the court's approval of the settlement agreement, and the court did approve the settlement agreement on August 29th and left open the issue of fees and costs because the defendant had indicated that he was not going to pay the settlement, and so that there would be an appeal for their attorney time, for their costs, and that kind of thing. So the court said it would be — as the court pointed out in its memorandum and order, there's no point in determining the cost because the litigation's ongoing, but as the court also pointed out, it has nothing to do with White. White — the court did approve the amount of the settlement and ordered that White would get his piece, in other words, his release, and his dismissal with prejudice for the payment of the sums that he had agreed to pay. Any further questions? I just want to call one — the court's attention to one point. When we got to the issue of whether or not the confidentiality was breached, Judge Breyer pointed out that the main breach occurred by Counsel for White himself in revealing in open court the amount of the settlement, and the other matters claimed in Counsel — Counsel for White's argument that the amount of the settlement were inconsequential. And Counsel for White claimed in the brief that he filed with this Court, well, the only reason he disclosed the amount of the settlement was because Judge Breyer ordered him to do so. And I would urge the Court that that was disingenuous on the part of Counsel for Mr. White, because Judge Breyer called him on that point, and he acknowledged in response to Judge Breyer that he was not required to read into the record so that the reporter in the audience could pick up the amount of the settlement. And that appears at the hearing and in this Court's record at page 6 — I believe it's 640 — over to 641, when Judge Breyer calls him to task on that, and he admits. But for some reason, forgot that particular situation when he filed his brief for this Court. Thank you for your time, Your Honors. We'll give you a few minutes for a bottle. First, let me jump around a bit. Mr. Hill argues that the two agreements, the one in a separate lawsuit in the State court against Mr. White, was somehow linked to the Federal case or the Federal — I'm sorry, the Federal agreement so that White's performance on the State settlement agreement in some way was partial performance of the Federal agreement. In fact, the Federal agreement only says that the State agreement has to be signed. But your client wanted a global settlement. That's what this is all about, right? He wanted it, but he ended up with a defective — No, but — Yeah. Go ahead. That's right, he did. So isn't it a little bit inconsistent to say that, no, it's not a global settlement? Well, two agreements, two separate agreements, each required signature of the other. I don't think necessarily that performance on one, the State agreement, necessarily means that there is performance on the first one such that he can't thereafter withdraw or seek to challenge the validity of the agreement. I mean, the problem is that there are so many errors and problems with this — with the agreement. The stipulation isn't signed by one of the defendants, counsels. But at the end of the day, you have — Go ahead, sir. I took the words right out of my mouth. At the end of the day, your client got what he bargained for. He paid money that he agreed to, and we have dismissals with prejudice as to all of the existing parties, and ultimately, you got a dismissal of prejudice against the two parties who couldn't be located. So what you're saying is, I might disagree on how the amount is going to be distributed. Maybe that would have affected my thinking about that. But that's not left open in the settlement agreement. There's no — and now they're all adults. So what's the problem? The problem is that they could all come back and sue Mr. White because — How can they? Well — Because the statute is run and you have a dismissal with prejudice. Well, I don't know if the statute is run. If they can get the dismissal without prejudice set aside — Right. If they can get the dismissal set aside, it'll reinstate the lawsuit as of September 2003. So the two remaining plaintiffs? Well, actually, all the plaintiffs. I mean, they're — Why? Well, they can — Explain to me your theory on that, because if you don't convince me that there's some potential out there, it seems to me we're just tilting at windmills here. Okay. What's the real potential for an additional suit? Okay. The problem is that one of the plaintiffs can come back and say, wait a minute, Collingsworth, one of the defendants, never signed the stipulation, and therefore he is not — we didn't enter into a contract with respect to mutual releases. Mutual releases, mutual dismissals, waiver of future claims under 1542 of the California Civil Code are all part of the settlement agreement. What does that matter to White? Collingsworth didn't cross-claim, did he? I would think that that might just be advantageous to the plaintiffs in case they wanted to sue Collingsworth. Right. They can sue Collingsworth. Collingsworth can sue — can sue White for indemnity. But the action was dismissed with prejudice. They're done with Collingsworth. They're done with your client. Subject to the settlement agreement. It was dismissed subject to the settlement agreement. No. It didn't say subject. It said the action is dismissed with prejudice and that the enforcement of the agreement was going to be retained within the jurisdiction of the district court. Okay. That's the only thing left here. One of the plaintiffs could come back and say, wait a minute, I didn't know that Borrego was getting so much money that was concealed from me by the plaintiff's counsel, and, therefore, I want to move to set aside the dismissal and I want to sue Tom White. Two of the plaintiffs, the missing plaintiffs, can show up and say, wait a minute, they dismissed a case without prejudice against me, and then they allow the court to dismiss it with prejudice against me. I had no idea I was giving up my claim. He can — he or he can file a motion under 60B. I don't know. You know, the one year I said in my — in my brief — Sure. I mean, according to you, it's time barred. No. And I'm sure that's the position you would take if such a suit were filed, isn't it? I might. Do you want to say now that it's not? Well, what I want to say — what I want to say is — I mean, your position has to be it's time barred, right? Well, but they can always file a separate — they can always file a lawsuit challenging the validity of the agreement. So if we affirm this settlement and say in it that the — that the — any action will now be time barred, what's your problem? I don't know what the problem is. I mean, if you say any action is time barred by any other plaintiff, but the problem is that the remaining — I mean, to overcome these hurdles, you've got — you've got a judgment that the action is dismissed with prejudice. They — that's res judicata as to all claims that could have been made and were made against your client in Collinsworth. So there's no possibility of an indemnity action if that's true. The — the potential for somebody else to come in, those two missing claims to come in, they're dismissed with prejudice. And if they get that set aside, you say it's time barred. And if we say that's all — that's all true, the only — the only quarrel you have is how the money is dispersed, which is really none of your business. I don't think it's time barred. I mean, I think there's a year period, but I think if a plaintiff comes into court or a client comes into court and says, I didn't know any of this, I was defrauded, I'm still being represented by this attorney, which they are, I think they could go beyond the one year, but they could also file a separate collateral action seeking to set aside the dismissal. Okay. They could. Counsel, suppose — suppose that the trial judge decided that the case is still pending, there's no final judgment as to all claims in all parties, and he's going to reconsider or perhaps reopen under Rule 60 his approval of the settlement. He thinks that it was hastily arrived at because the possibility of punitive damages was so great in the case, and the case really should not be settled for that. So he vacates his order of approval. Could the plaintiffs now come back and sue White for compensatory and punitive damages if he did that? If he vacates the settlement agreement? Yes. If he vacated the settlement agreement, the case would go back to — You're headed for trial. Well, we're back to proceeding before the trial court. You're right. I mean, if he vacates the settlement agreement, then we're back to square one, before the settlement agreement. That's true. That's true. I mean, the problem is that there are so many defects, and I keep saying that, I know, and I've said them all in my brief. Well, we've read your brief, so we don't need to explore all the theories. Any further questions? I just would like to make a comment that the settlement agreement, which is in the But the money actually is to be paid on page 258, for example, paragraph 9.8. The money is to be paid to the trustee. Exactly. But Judge Breyer ordered in the judgment that it be paid into court. I know. So I don't know if that's valid. And the problem is, since he hasn't designated a trustee, the whole approval of the minor's compromises is still open. And therefore, the dismissal of the two plaintiffs, I know I keep getting back, the dismissal of the two plaintiffs was way premature. It should wait until Judge Breyer finally resolves all the issues on the minor's compromise, including designation of the trustee, attorney's fees, determination, costs, and so on. But Mr. Hills told us that those two missing plaintiffs were of the aging majority at the time they filed. They were. They were. So there's no issue with respect to them. Well, what I'm saying, though, is that determination as to them was prematurely decided by Judge Breyer. In the interim, my client withdrew his offer. Yeah. No, I understand. Okay. Thank you very much. The case is here to be submitted, and we will be in recess for the afternoon.
judges: Kleinfeld, Thomas, Larson